STATE OF NEBRASKA, APPELLEE,
V. TRAVIS R. BUECHLER, APPELLANT.
572 N.W. 2d 65

Filed January 9, 1998.    No. S-96-1229.

Randall L. Lippstreu, of Harris & Lippstreu, P.C., and David Eubanks, of Van Steenberg Law Office, for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

Pursuant to verdict, the defendant-appellant, Travis R. Buechler, was adjudged guilty of murder in the first degree, in violation of Neb. Rev. Stat. § 28-303(1) (Reissue 1995), and of using a firearm to commit a felony, in violation of Neb. Rev. Stat. § 28-1205 (Reissue 1989). He was thereafter sentenced to life imprisonment for the murder conviction and to a consecutive sentence of not less than 5 nor more than 15 years' imprisonment for the use of a firearm conviction. Inasmuch as a sentence of life imprisonment was imposed, Buechler's appeal was docketed in this court pursuant to the provisions of Neb. Rev. Stat. § 24-1106 (Reissue 1995). Buechler asserts, in summary, that the district court erred in (1) making certain evidential rulings, (2) failing to grant a mistrial, and (3) improperly accounting for time served. We reverse, and remand for further proceedings.

## II. FACTS

On March 14, 1994, a ranch hand discovered the skeletal remains of a body in a little-used corral on an abandoned farmstead in Sioux County, Nebraska. The body was identified as that of Efrain Hernandez, who was last seen alive on June 15, 1993.

Buechler was arrested and jailed on September 23, 1995, and gave police authorities a videotape-recorded confession on September 27. Buechler was a daily heavy user of methamphetamine, cocaine, and marijuana right up to the time of his arrest.

In his recorded confession, Buechler stated that he and Andrew Requejo, a friend and local drug dealer, picked up the victim, who was actively involved in drug dealing in the Scottsbluff area, to complete a purchase of marijuana. After making a marijuana delivery at a business on the edge of

Morrill, Nebraska, they drove north into Sioux County. The victim had been verbally abusing Buechler for driving erratically, so Buechler stopped the automobile, pretending that something was wrong with a wheel. Buechler got out and pretended to check it. The victim also got out of the automobile, whereupon Buechler shot him several times in the face and, after the victim fell, in the back of the head. Buechler claimed to have seen two bullet holes in the victim's left eye, but denied having shot the victim in the body. After the shooting, Buechler and Andrew Requejo went to Mitchell, Nebraska, to get Andrew Requejo's younger brother, Richard Requejo. The three of them then moved the body to the corral, where it was later found.

During the trial, Buechler testified that immediately after the murder, Andrew Requejo warned that if Buechler told anyone about the murder, he, Andrew Requejo, would hurt Buechler or his family. Also influencing Buechler at the time of his recorded confession was a phone call from his girl friend, Kristine Kenzy, with whom he had been living and with whom he had sired a daughter, in which the girl friend told him that the police were threatening to take away the daughter and throw her, the girl friend, in jail if she did not tell them everything she knew about the murder.

Richard Requejo admitted that as part of his plea bargain, an accessory to murder charge which had been made against him was dismissed, and testified that after his brother and Buechler went to get him on the night of the murder, he drove them to the body and that they then took the body to the old corral. Richard Requejo also testified that on the night of the murder, Buechler admitted that he had done the shooting, and further testified that immediately after the body was discovered, Buechler told him that he, Buechler, had killed the victim for the marijuana. However, Buechler testified that during the period this second conversation supposedly took place, he was in jail.

The girl friend's mother testified that on April 25, 1995, because Buechler "wanted to get it out of his system," he told her and her husband that he had killed someone. The mother testified that in June 1995, Buechler told her his motive was that "[t]his fellow he kept after him and after him and he said that he thought he was too good for him and he made me mad," and at

a later date that "I was just mad." On cross-examination, the mother could not remember if she also told police authorities that Beuchler told her of the Requejos' involvement in the murder, although she did remember that Buechler said they were involved. The girl friend's father corroborated his wife's testimony; however, on cross-examination, he gave confusing testimony as to what information he and his wife had given police authorities. Buechler's testimony at trial was that while he told the girl friend's parents he had been involved in a murder, he never told them he did the shooting.

A former girl friend of Richard Requejo's testified that he told her that his brother, Andrew Requejo, had killed the victim.

Beuchler testified at trial that on the drive north from Morrill, Andrew Requejo ordered him to stop the automobile. Buechler got out of the automobile to check a wheel and heard shots. He stated that he was surprised and frightened by the shooting.

Buechler also testified that Andrew Requejo left the marijuana that had been purchased from the victim at Rein's Body Shop prior to the murder. Stuart Rein testified that a large marijuana delivery was made at his shop sometime in the summer of 1993.

While Buechler indicated in his recorded confession that he was angered by the verbal abuse concerning his driving, testimony indicated that Buechler spoke and understood very little Spanish. The victim was described as speaking very little English.

The drug dealer with whom the victim had been working, Martin Juarez, did not receive any payment for the marijuana Andrew Requejo had received and sold. After the victim's death, Andrew Requejo began making large drug deals directly with Juarez.

When found, the victim's body was in an advanced state of mummification, with the soft tissue dried out so that it was leathery or paper thin. On October 18, 1995, police authorities searched along a road adjacent to the farmstead at which the body was found and discovered a single shell casing. However, by that time, the road had been substantially graded, making it less likely that additional shell casings would be found.

During the course of autopsying the victim's body, a forensic pathologist discovered two bullets in the body and determined

the cause of death to be multiple gunshot wounds to the chest and neck. One bullet was removed from the left side of the chest. The other bullet was taken from the left side of the neck, lying very close to the surface of the skin, just above the midpoint of the left collarbone. Because the amount of skin remaining on the body was inadequate, entrance wounds could not be identified. As a result of the decomposed state of the body, neither could the pathologist determine whether other bullet wounds had been inflicted. There was no evidence of bullet wounds to the head itself.

## III. ANALYSIS

### 1. EVIDENTIAL RULINGS

In the first assignment of error, Buechler claims that the district court wrongly (a) excluded testimony concerning his pretrial denials of the killing, (b) permitted the plaintiff-appellee, State of Nebraska, to question him about prior bad acts, and (c) excluded testimony relating to the circumstances under which he confessed.

The analysis of each of these claims is controlled by the rule that in all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under such rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997).

### (a) Pretrial Statements

Buechler desired to examine witnesses who would testify that he had denied killing the victim before he so claimed, while testifying on his own behalf at trial. He urges that contrary to the district court's basis for excluding such testimony, the testimony was not hearsay. Neb. Evid. R. 801(4)(a), Neb. Rev. Stat. § 27-801(4)(a) (Reissue 1995), provides that a "statement is not hearsay if: (a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication . . . ."

Contrary to his recorded confession, Buechler testified at trial not only that he did not kill the victim, but that he had no warning the shooting was about to take place. Thus, Buechler's trial testimony was dramatically different from the statements he made in the recorded confession the district court had received in evidence.

However, prior consistent out-of-court statements are defined as nonhearsay and are admissible to rebut a charge of recent fabrication, improper influence, or improper motive only when those statements were made before the charged recent fabrication, improper influence, or improper motive. *State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996). Here, the State impeached Buechler's trial testimony by pointing out that during his recorded confession, Buechler made no mention of any threats from Andrew Requejo and by establishing that Buechler had not realized the confession was being videotape-recorded. Thus, the State clearly implied that Buechler's testimony at trial was not credible. The question, however, is whether that implication rises to the level of a charge that his trial testimony was a recent fabrication, as Buechler claims. Attempts at impeachment cannot be equated to charges of recent fabrication. As noted in *Thomas v. U.S.*, 41 F.3d 1109, 1119-20 (7th Cir. 1994): "One may impeach for lack of credibility without going so far as to charge recent fabrication. . . . We will not find abuse of discretion where, as here, the impeachment is susceptible of either interpretation." In the instant case, the State's cross-examination pointing out that Buechler "didn't know that videotape was on" and that he "never figured that would be in front of a jury" merely buttressed the credibility of the recorded confession.

There being no charge of recent fabrication, the district court was correct in excluding testimony concerning Buechler's prior statements.

### (b) Prior Bad Acts

Buechler next urges that the district court erred by permitting the State to question him about certain prior bad acts.

Notwithstanding Buechler's objections and a pretrial ruling that the State would "not use any prior convictions or bad acts of [Buechler] for any purpose except impeachment," the State asked Buechler a series of questions concerning some of his

prior bad acts. The series of questions began with, "You were violent with [your girl friend], weren't you?" and continued to, "And on that day did you attack an officer by the name of Squires and grab him around the throat?" After that last question, the district court finally sustained Buechler's objection on the ground that the prior bad acts about which Buechler was being questioned had not been disclosed by the State prior to trial.

The State's first question concerning the girl friend was answered without objection. The State argues that Buechler's denial that he was violent with his girl friend opened the door to impeachment, at least on the subject of whether he had acted violently with her.

While this question may well have violated the pretrial order, a party waives the right to assert on appeal prejudicial error concerning the admission of evidence received without objection. *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990). Under that circumstance, the remaining questions concerning Buechler's violence toward the girl friend constituted proper impeachment.

The State also asked Buechler if he had ever threatened or become violent with his daughter. Although this line of questioning cannot be said to have been included within the impeachment of Buechler's denial of violent acts toward his girl friend, no objections were interposed. (At one point Buechler was granted a continuing objection to questions concerning violence toward his girl friend, but violence toward his daughter is a separate and different matter.)

Thus, the only series of questions that remains for consideration is the series that began, "In fact, you have a history of violence, don't you?" Buechler did object to this question. In this regard, the district court's ruling violates Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1995), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In applying § 27-404(2), we have said that evidence of other crimes, wrongs, or acts may be admitted where the evidence is so related in time, place, and circumstances to the offense charged as to have substantial probative value in determining the accused's guilt of the offense in question. *State v. Hunt*, 220 Neb. 707, 371 N.W.2d 708 (1985); *State v. Keithley*, 218 Neb. 707, 358 N.W.2d 761 (1984). See, also, *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981). The inference that Buechler acted in this case in conformity with his character is the only reason for asking Buechler whether he had a general history of violence. Thus, the district court abused its discretion in permitting Buechler to be cross-examined about his general history of violence. See *State v. Williams*, 247 Neb. 878, 530 N.W.2d 904 (1995) (admission of evidence of other wrongs or acts within trial court's discretion).

However, our analysis of this issue cannot end there, for the question at this point becomes whether the error prejudiced Buechler. If the improper admission of the evidence was harmless beyond a reasonable doubt, there was no prejudice. See *State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996) (harmless error exists in jury trial of criminal case when incorrect conduct by trial court, on review of entire record, did not materially influence jury in verdict adverse to substantial right of defendant).

Given that the questions asked of Buechler about violence toward his girl friend and daughter were not objected to, we must conclude that when weighed against the totality of the evidence, the error in overruling Buechler's objections to the few questions concerning his general violent behavior was harmless beyond a reasonable doubt.

### (c) Circumstances of Confession

Buechler further contends that the district court should not have excluded expert testimony concerning the circumstances under which he confessed, namely, testimony concerning his mental state and the effect thereof on his statements.

A clinical psychologist conducted a mental health evaluation of Buechler and viewed the recorded confession. The psychologist was prepared to testify that Buechler suffered from major depression disorder, attention deficit disorder, anxiety disorder,

and paranoid personality disorder. The psychologist was also prepared to testify that due to Buechler's incarceration prior to his recorded confession, he was, at the time of the confession, in the throes of methamphetamine withdrawal. The psychologist would also have testified that the psychological effects of withdrawal include severe depression, extreme feelings of hopelessness, difficulty concentrating, and high levels of distress and suggestibility. As a result, Buechler would have been very suggestible, would waiver in his attitudes and beliefs, would process information haphazardly, and would often reach faulty conclusions.

In the context of lay testimony, the U.S. Supreme Court, in *Crane v. Kentucky*, 476 U.S. 683, 684, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986), held that a defendant is denied his 6th and 14th Amendment right to present a defense if prohibited from presenting evidence "about the physical and psychological environment in which the confession was obtained." Therein, a 16-year-old minor was arrested for a robbery and, while being questioned, confessed to a totally unrelated murder and robbery. The confession was inconsistent with the facts of the crime in a number of respects. The defense unsuccessfully attempted to introduce evidence concerning the duration of the interrogation or the individuals who were present in order to show that the minor's confession was not worthy of belief. In reversing the minor's conviction and remanding the cause for a harmless error analysis, the high court rejected the trial court's determination that the issue had been resolved by its earlier finding that the minor had confessed voluntarily. The high court explained that the Due Process Clause and the Confrontation Clause of the Sixth Amendment entitle a criminal defendant to " 'a meaningful opportunity to present a complete defense,' " *id.* at 690, "entirely independent" of the determination of the voluntariness of his or her confession, *id.* at 689. The high court observed that if a jury cannot hear evidence of the circumstances under which a confession is obtained, "the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?" *Id.* at 689.

With those constitutional precepts before us, we turn our attention to whether the district court abused its discretion in

excluding the psychologist's testimony. See *State v. Thieszen*, 252 Neb. 208, 560 N.W.2d 800 (1997) (admission of expert testimony ordinarily within discretion of trial court, and ruling will be upheld absent abuse of discretion).

Expert testimony is admissible under Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995), if it assists the trier of fact to "understand the evidence or to determine a fact in issue . . . ." In *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990), we laid out a four-part test for determining the admissibility of expert testimony: (1) Does the witness qualify as an expert? (2) Is the testimony relevant? (3) Will the expert's testimony assist the trier of fact to understand the evidence or determine a controverted factual issue? (4) Should the expert's testimony be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence? In *Reynolds*, the trial court received expert psychological testimony concerning the defendant's impulsive personality, but excluded the experts' conclusions that the defendant's actions were not deliberate and premeditated. In ruling that the trial court had not abused its discretion in excluding the experts' conclusions, we wrote that "a court may exclude an expert's opinion which is nothing more than an expression of how the trier of fact should decide a case or what result should be reached on any issue to be resolved by the trier of fact," *id.* at 687- 88, 457 N.W.2d at 421, and observed that as the experts had described the defendant's personality, the jury was as qualified as the experts to draw the factual conclusion as to whether, as an impulsive person, the defendant deliberated and premeditated his act. In doing so, we recited the observation by McCormick that "an expert's contribution in litigation 'is the power to draw inferences from the facts which a jury would not be competent to draw. . . .' McCormick on Evidence § 13 at 33 (E. Cleary 3d ed. 1984)." *Id.* at 683, 457 N.W.2d at 418-19.

At least two federal courts have addressed whether it was error to exclude expert testimony relating to the circumstances under which a confession was obtained. The U.S. Court of Appeals in *U.S. v. Shay*, 57 F.3d 126 (1st Cir. 1995), reversed a trial court's decision to exclude expert testimony on

Munchausen's Disease, a mental disorder characterized by extreme pathological lying. The expert would have testified that the defendant's psychological condition would cause him to make statements similar to those in his confession. Holding the exclusion of that testimony erroneous, the *Shay* court wrote that the jury "plainly was unqualified to determine without assistance the *particular* issue of whether [the defendant] may have made false statements against his own interests because he suffered from a mental disorder." (Emphasis in original.) *Id.* at 133. In *U.S. v. Hall*, 93 F.3d 1337 (7th Cir. 1996), the trial court excluded psychiatric testimony that the defendant was easily led and had a propensity for giving false confessions on the ground that it would invade the prerogative of the jury to assess the credibility of witnesses. The appellate court vacated the defendant's conviction and remanded the cause, holding that the trial court "missed the point of the proffer. It was precisely because juries are unlikely to know that social scientists and psychologists have identified a personality disorder that will cause individuals to make false confessions that the testimony would have assisted the jury in making its decision." *Id.* at 1345.

A number of other states have also addressed the issue. For example, in *State v. Koskela*, 536 N.W.2d 625 (Minn. 1995), the Minnesota Supreme Court held that on the issue of the reliability of the defendant's confession, the trial court had not abused its discretion in ruling that a clinical psychologist could testify as to the nature of schizoid personality disorder, but could not testify as to whether the defendant fit the disorder, as that was a question for the jury. Subsequently, the Minnesota Court of Appeals in *Bixler v. State*, 568 N.W.2d 880 (Minn. App. 1997), held in a postconviction proceeding that if a witness was properly qualified as an expert, it was error for the trial court to exclude expert testimony concerning the defendant's susceptibility to coercion. The court wrote that a defendant must be allowed to challenge the truthfulness of a confession by presenting competent expert evidence demonstrating susceptibility to coercion, noting that such evidence may be crucial to the jury's consideration of why the defendant asserts innocence after having confessed. In *Carter v. State*, 697 So. 2d 529 (Fla. App. 1997), the Florida Court of Appeals reversed a conviction

because of the trial court's exclusion of psychiatric evidence relating to whether the defendant had the mental capacity to knowingly waive his *Miranda* rights. The reviewing court held the ruling to be an abuse of discretion, especially since the prosecution argued to the jury that the defendant " 'knew exactly what was going on' " when he waived his rights and made incriminating statements to police. *Id.* at 534. In a case with a slightly different twist, a Pennsylvania court upheld the admission of expert testimony by the prosecution to the effect that pain medication taken by the declarant while he was giving a statement to police did not affect his cognitive ability. *Com. v. Ellis*, 700 A.2d 948 (Pa. Super. 1997).

Although the Illinois Supreme Court noted in *People v. Gilliam*, 172 Ill. 2d 484, 512-13, 670 N.E.2d 606, 619 (1996), that once a confession is found to be admissible, "the defendant still has the right to present evidence to the jury that affects the credibility or weight to be given the confession," it nonetheless held that the trial court did not abuse its discretion in excluding the proffered testimony of a psychologist that the defendant's desire to protect his family made him especially susceptible to police pressure and created a form of psychological compulsion to confess. The *Gilliam* court reasoned that the concept of testifying falsely to protect one's family was not beyond the understanding of ordinary citizens and was not difficult to understand or explain.

Thus, we reach the question as to whether the district court here abused its discretion in rejecting the psychologist's proffered testimony, which undertook not to tell the jury how to decide the case or what result should be reached on any issue to be resolved by it, but, rather, to explain Buechler's mental state at the time of the recorded confession. While ordinary citizens might understand that drug withdrawal is uncomfortable, without expert evidence ordinary citizens would not be expected to understand that in Buechler's case, withdrawal, combined with his disorders, may have made him suggestible, may have caused him to process information haphazardly, and may have caused him to reach faulty conclusions. Under that state of the record, we must conclude that the district court abused its discretion in excluding the proffered testimony.

The ultimate question therefore becomes whether the erroneous exclusion of the psychologist's testimony was harmless beyond a reasonable doubt. While three witnesses testified that Buechler confessed killing the victim to them, the jury could well have questioned their credibility. Richard Requejo's testimony is particularly problematic, both because he testified in order to avoid being charged with being an accessory to the same murder and because the other suspect to the murder is his brother. Moreover, he described one of the confessions as occurring during an automobile ride with Buechler at a time when Buechler was incarcerated. The mother of Buechler's girl friend made it very clear that she did not like Buechler because of the way he mistreated her daughter.

As there was no physical evidence tying Buechler to the murder, the strongest element of the State's case was Buechler's recorded confession, which was not entirely consistent with the pathologist's findings. The autopsy findings belied Buechler's claims that he had shot the victim in the head and that he had not shot him in the body. The psychologist's testimony would have assisted the jury in determining a crucial issue, Buechler's credibility at trial. The district court's ruling handicapped Buechler in his attempt to adequately present to the jury his theory that the recorded confession was not worthy of belief. Had the jury heard the psychologist's testimony, it need not, but might well have concluded that Buechler falsely confessed.

In a jury trial of a criminal case, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996). Given the state of the record, the exclusion of the psychologist's testimony cannot be said to have been harmless beyond a reasonable doubt.

## 2. FAILURE TO GRANT MISTRIAL

Buechler's contention in the second assignment of error that the district court should have sustained his motion for mistrial rests on the State's failure, contrary to a pretrial ruling, to excise from the recorded confession the reference to the fact that police authorities "told [Buechler] the questions [they] wanted to ask [him] on the polygraph."

Since the State cannot, in the new trial required by our conclusion in part III, subpart 1(c), above, again inadvertently fail to strike that reference, we need write no more on this topic.

### 3. ACCOUNTING FOR TIME SERVED

The requirement of a new trial also obviates any need to discuss any error in accounting for the time Büechler served prior to sentencing.

### IV. JUDGMENT

Because of the district court's error in excluding the psychologist's testimony, its judgment is, as first noted in part I, reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.