STATE OF NEBRASKA, APPELLEE, V. DAN SANCHEZ, APPELLANT.
597 N.W. 2d 361

Filed July 16, 1999. No. S-98-660.

292

Dave B. Eubanks and Maren Lynn Chaloupka, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellant.

Don Stenberg, Attorney General, and Donald J.B. Miller for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Dan Sanchez appeals from his conviction of first degree sexual assault following a jury trial in the district court for Box Butte County. We conclude that the district court erred in admitting testimony regarding uncharged criminal acts occurring prior to the charged offense and, therefore, reverse, and remand for a new trial.

## I. FACTS AND PROCEDURAL BACKGROUND

Sanchez was charged under Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1995) with sexually assaulting 13-year-old A.S. at some time during the period of December 25, 1996, to February 24, 1997. On June 16, 1997, A.S. reported the incident to her mother, who notified law enforcement authorities on the same date. Prior to trial, Sanchez filed a notice of intent to offer evidence of A.S.' prior sexual behavior pursuant to Neb. Rev. Stat. § 28-321 (Reissue 1995) and requested an in camera hearing on this issue. Also prior to trial, the State filed a notice of its intent to offer "other acts" evidence pursuant to Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1995), in order to establish that Sanchez had engaged in sexual contact, including penetration, with his biological daughters and former wife while they were under the age of 16. Sanchez filed motions in limine to exclude this evidence pursuant to Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995).

### 1. RULE 404(3) HEARING

On April 16, 1998, the district court conducted a pretrial evidentiary hearing on the State's proposed offer of "other crimes" evidence as required by rule 404(3). At this hearing, the State called L.G., who had been married to Sanchez from 1976 until 1983, and Au.G. and A.G., children of this marriage.

Au.G., whose date of birth is May 16, 1980, testified that Sanchez sexually assaulted her repeatedly during a 2-week sum-

mer visitation in 1984 or 1985 at an apartment in Texas where Sanchez then resided. She testified that Sanchez fondled her and that on one occasion, she felt cold and pain in her vaginal area while Sanchez was on top of her. On cross-examination, Au.G. said she was confused when, approximately 1 to 2 months prior to the hearing, she reported that the incidents had occurred in Alliance, Nebraska. She further stated that memories of the assault came back to her in dreams and flashbacks.

A.G., whose date of birth is March 30, 1976, also testified that she was sexually assaulted by Sanchez when she was a young child but expressed uncertainty as to whether the events actually happened or were a part of a dream.

L.G., whose date of birth is September 7, 1961, married Sanchez in 1976 when she was 14 years old. She testified that she first met Sanchez when she was 13 and had accompanied a friend, Sanchez' sister, to the Sanchez home after school. She was introduced to Sanchez, who was 22 years old at the time, and accompanied him to his room to view his sports trophies and awards. She stated that when Sanchez' sister left the room, he sexually assaulted her, achieving vaginal penetration. She testified that Sanchez subsequently subjected her to oral and vaginal penetration on multiple occasions prior to their marriage in 1976. When the marriage was dissolved in 1983, L.G. obtained custody of A.G. and Au.G., and Sanchez was given visitation rights. L.G. testified that when Au.G. told her of the molestation by Sanchez during the visitation in Texas, she attempted to obtain a court order terminating Sanchez' visitation rights but was unsuccessful in that effort. L.G. remarried, and in September 1985, Sanchez relinquished parental rights to Au.G. and A.G., who were adopted by L.G.'s new husband.

Sanchez called three witnesses at the pretrial hearing. Katie Sanchez, who was married to Sanchez from 1990 to 1998, testified that she was living in Garland, Texas, with Sanchez in 1985 and stayed with friends during a 2-week period when Sanchez' daughters came for a summer visit. However, she observed Sanchez with his children during this visitation and stated that the girls appeared happy. Sanchez' brother testified that he and his wife transported A.G. and Au.G. back to their home after a visitation with Sanchez in Texas in the summer of 1985. He

stated that he did not notice anything unusual about their behavior during this trip other than that they were "fidgety," which he attributed to the fact that they were not familiar with his family. Sanchez' sister-in-law testified that nothing unusual happened during the journey. Sanchez' mother testified that L.G. came to their home "constantly" in 1975 to see Sanchez and that for the initial 2 months of this period, there was an open doorway with no door between Sanchez' room and the adjacent kitchen.

Sanchez also offered certain documentary evidence which was received by the court, including transcripts of depositions of L.G., Au.G., and A.G.; a videotape containing interviews of the same persons; and certain pleadings, motions, and orders from the proceedings in the district court for Box Butte County dissolving the marriage of Sanchez and L.G. and determining custody and visitation rights. On May 4, 1998, the district court entered an order granting the State's motion to present "other acts" evidence through the testimony of L.G. and Au.G., but denying the motion as to the testimony of A.G.

## 2. Section 28-321(2) Hearing

Immediately following the rule 404(3) hearing, the district court conducted an in camera hearing pursuant to § 28-321(2) on Sanchez' motion to offer evidence of A.S.' past sexual behavior. Sanchez offered the depositions of A.S. and her mother, taken October 10, 1997, and the deposition of Alliance police officer Craig Dvorak, taken September 17, 1997. The parties also stipulated that the last day of the 1996-97 school year in Alliance was June 4, 1997.

In her deposition, A.S. testified that she was asleep at Sanchez' home on New Year's Eve 1996 and was awakened by pelvic pain caused by Sanchez' penetrating her with his finger. She also testified that in June 1997, she was attending a drive-in movie with her 13-year-old boyfriend when her boyfriend briefly touched her vaginal area under her clothing but did not penetrate her. Dvorak testified that during his initial investigation, A.S. told him that her boyfriend had touched her crotch area over her clothing. A.S.' mother recalled that A.S. had mentioned to Dvorak that she resisted a boy's attempt to place his hand under her shirt and that she kissed him. In its pretrial order

of May 4, 1998, the district court denied Sanchez' motion to present this evidence at trial.

### 3. TRIAL

A jury trial was held on April 27 and 28, 1998. A.S. testified that Sanchez was her godfather and that for a period of time, she visited the Sanchez home once or twice a week and spent the night almost every other week. When asked the specific date when the assault occurred, she replied, "I think it was New Year's but I'm not sure." She said that the assault occurred some time after her 13th birthday on December 21, 1996, but before she visited a doctor in February 1997. She stated that when the assault occurred, she was at the Sanchez residence watching television in a first-floor room. Katie Sanchez, Sanchez' wife at the time, and one of his three sons were watching television with A.S. for a time, but they then left. A.S. testified that she got bored and went to a second-floor room in the home where the other two Sanchez boys were asleep on a couch and Sanchez was sitting in a recliner watching television. She sat down on the right arm of the chair next to Sanchez and fell asleep.

A.S. testified that she was awakened by a sharp pain in her vaginal area. She then felt someone kissing her on the mouth, and when she opened her eyes, she saw that it was Sanchez. She also saw a part of his hand coming out of her shorts. A.S. told him to stop and then left the room and went back downstairs, where she fell asleep.

Sanchez made an offer of proof regarding A.S.' encounter with her boyfriend, which the court overruled based upon its finding that the evidence was irrelevant and inadmissible under § 28-321.

A pediatrician testified that he examined A.S. on February 24, 1997, because of A.S.' complaints of painful and frequent urination. He referred A.S. to a licensed nurse practitioner, who conducted a genital examination and diagnosed a vaginal yeast infection. She testified that A.S.' hymen was intact and stated that pressure on the hymen could cause pain. The pediatrician and the nurse practitioner both testified that the absence of physical injury does not rule out the occurrence of a sexual assault.

The State called Au.G. as a witness at trial. When the prosecutor began questioning her about her visit with Sanchez in

Texas when she was 5 years old, Sanchez objected on the ground that the evidence was inadmissible under rule 404. The district court overruled the objection but gave the following limiting instruction before permitting Au.G. to testify:

> Ladies and gentlemen of the jury, we are now going to hear some evidence that is being received for a specified limited purpose. Evidence of other crimes or acts is admitted for the limited purpose of showing that proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Such evidence is not admissible to prove the character of the defendant or that thè defendant acted in conformity with that prior offense in the same offense that he is charged with in this court. The evidence that the defendant committed other crimes or acts may be considered by you only for the limited purpose of showing that the defendant had motive, opportunity, intent, preparation, plan, or knowledge to commit the offense that he is charged with in this case or to establish the identity or absence of mistake or accident, the evidence may be considered by you for no other purpose.

Au.G.'s subsequent testimony was generally consistent with that which she gave at the rule 404(3) hearing.

The State also called L.G. as a witness at trial. The court overruled Sanchez' timely rule 404(2) objection and instructed the jury: "I gave you a limiting instruction when [Au.G.] testified. That same limiting instruction is in effect in regard to any testimony by this witness in regard to prior acts." L.G. then testified to the matters which were the subject of her testimony at the rule 404(3) hearing, adding the detail that during their initial sexual encounters, Sanchez pinched her nipples violently and penetrated her with his finger before having intercourse.

Testifying on his own behalf, Sanchez denied sexually abusing Au.G. Regarding A.S., he stated that on New Year's Eve 1996, he worked until 6 p.m. and then went home and watched football on television. He stated that A.S. was not present at his home on that evening and that on other occasions when she had been in his home, he had never observed her in the second-floor den where she alleged that the assault had occurred. Sanchez denied assaulting A.S.

Katie Sanchez, who was married to Sanchez from 1990 to 1998, also testified that A.S. was not present at the Sanchez' home on New Year's Eve 1996. She stated that on other occasions when A.S was present in their home, she was not allowed to go into the second-floor den if Sanchez was there because it was "his space." Katie Sanchez also testified that A.S. accompanied her on a trip to Katie Sanchez' parents' home in March 1997, but that Sanchez did not go along.

Included in the court's instructions to the jury at the close of the case was the following:

> During the trial I told you that certain evidence was received for a limited purpose. The testimony that Sanchez sexually assaulted [L.G.] and [Au.G.] was received for the limited purpose of proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or lack of mistake or accident. You must consider this evidence only for that limited purpose and no other.

The jury returned a verdict of guilty, and Sanchez was sentenced to a period of incarceration of not less than 5 nor more than 7 years, with credit for time served. He then perfected this appeal, which we removed to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts.

## II. ASSIGNMENTS OF ERROR

Sanchez asserts, restated, that the trial court erred in (1) precluding him from offering evidence regarding the victim's past sexual behavior and (2) allowing the State to present evidence regarding prior bad acts allegedly committed by Sanchez.

## III. STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in determining admissibility. *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998). Where, as here, the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is

reviewed for an abuse of discretion. See *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997).

■ Because the exercise of judicial discretion is implicit in Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995), it is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under rules 404(2) and 403, and the trial court's decision will not be reversed absent an abuse of that discretion. *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998).

## IV. ANALYSIS

### 1. VICTIM'S PAST SEXUAL BEHAVIOR

■ Nebraska's rape shield law, § 28-321(2), provides in part that evidence of a sexual assault victim's past sexual behavior shall not be admissible unless such evidence is

(a) [e]vidence of past sexual behavior with persons other than the defendant, offered by the defendant upon the issue whether the defendant was or was not, with respect to the victim, the source of any physical evidence, including but not limited to, semen, injury, blood, saliva, and hair; or (b) evidence of past sexual behavior with the defendant when such evidence is offered by the defendant on the issue of whether the victim consented to the sexual behavior upon which the sexual assault is alleged if it is first established to the court that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.

■ The purpose of the rape shield law is to protect sexual assault victims from grueling cross-examination concerning their previous sexual behavior, which often elicits evidence of questionable relevance to the case being tried. *State v. Earl, supra*; *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986); *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985). Under this statute, evidence of a complainant's prior sexual behavior is inadmissible unless it tends to prove one of the two explicitly stated exceptions; i.e., source of physical evidence or consent. *State v. Earl, supra*.

We agree with the determination of the district court that the evidence which Sanchez sought to present at trial regarding A.S.' past sexual behavior does not fit within either of these exceptions. Sanchez does not seriously dispute this determination but argues that the evidence is nevertheless admissible because its exclusion would violate his rights to confrontation and compulsory process pursuant to the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . ." Article I, § 11, of the Nebraska Constitution provides:

> In all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel, to demand the nature and cause of accusation, and to have a copy thereof; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

This court has not decided a case in which evidence inadmissible under § 28-321 was found to be admissible on constitutional grounds. Although this theory of admissibility was argued in *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997), we did not reach the constitutional issue because we concluded that the defendant "did not adduce evidence of sufficient relevance, i.e., evidence establishing that [the victim] had prior knowledge of the same kind of sexual activities of which the defendant is accused." *Id.* at 134, 560 N.W.2d at 497. In *Earl*, the defendant was charged with first degree sexual assault of a 6-year-old boy. The specific acts alleged to constitute the assault included fondling and fellatio. He sought to introduce evidence that prior to the alleged assault, the victim and his 5-year-old female cousin, who herself had been a victim of sexual assault, had been observed " 'playing husband and wife' " and "pretending to have sex while they were totally nude." *Id.* at 135, 560 N.W.2d at 497. The defendant argued that this evidence was relevant to establish an alternative source of the victim's sexual

knowledge in order to rebut the inference that a child of tender years could not possess the explicit sexual knowledge he had but for the alleged assault. In rejecting this argument, we reasoned that even if this conduct between the children had occurred, it could not have provided the victim with knowledge of the specific conduct involved in the alleged assault. We concluded that the evidence of the victim's prior sexual behavior did not fall within the statutory exceptions provided for in § 28-321 and that it was not "so relevant and probative that Earl's constitutional right to present it would be triggered." *State v. Earl*, 252 Neb. at 135, 560 N.W.2d at 497.

Sanchez interprets this language as suggesting that "there may well be instances where evidence of prior sexual behavior is so relevant and so probative that it triggers a defendant's constitutional right to present it, regardless of whether it meets either criterion provided in NEB. REV. STAT. §28-321." Brief for appellant at 8. From this premise, he argues that evidence concerning A.S.' conduct with her boyfriend should have been admitted "for the purpose of showing that the conduct attributed to Sanchez had, in fact, been committed by another male." Brief for appellant at 5. In this regard, he relies upon *Com. v. Spiewak*, 533 Pa. 1, 617 A.2d 696 (1992), in which the defendant was accused of sexually assaulting his 15-year-old stepdaughter. He admitted having sexual relations with the victim after she reached the age of 16. The prosecution established that the victim had confided to her boyfriend that she had experienced oral intercourse with "an older man" prior to her 16th birthday, and, in her trial testimony, she identified that person as the defendant, describing the act in specific detail. Relying upon Pennsylvania's rape shield law, the trial court precluded the defendant from cross-examining the witness with her previous sworn testimony that she had similar sexual contact with a different "older man" prior to her 16th birthday. The Supreme Court of Pennsylvania reversed the district court's decision based upon its conclusion that excluding the evidence abridged the defendant's constitutional right to confrontation. It reasoned that once the prosecution offered evidence which raised an inference that the complainant had a single sexual contact with an "older man" prior to her 16th birthday, the defendant had a

basic constitutional right to establish, on cross-examination, that she had previously and under oath identified that person as someone other than himself. *Id.*

Sanchez also relies on *People v. Hill*, 289 Ill. App. 3d 859, 864, 683 N.E.2d 188, 192, 225 Ill. Dec. 244, 248 (1997), in which the court stated that "under proper circumstances, evidence of a child witness's prior sexual conduct is admissible to rebut the inferences that flow from a display of unique sexual knowledge," notwithstanding the Illinois rape shield law. However, the court also stated that the "prior sexual conduct must be sufficiently similar to defendant's alleged conduct to provide a relevant basis for its admission. It must engage the same sexual acts embodied in the child's testimony." *Id.* The court concluded that while the 6-year-old female victim clearly possessed age-inappropriate knowledge concerning the specific sexual act with which the defendant was charged, evidence that the victim had previously reported similar contact with a young boy was properly excluded because it was lacking in detail and could not fully rebut the inference that the child's knowledge was derived from the defendant. *Id.*

We find Sanchez' authority on this issue distinguishable and his arguments unpersuasive. Assuming, without deciding, that there may be circumstances in which the accused's constitutional right to confrontation would require admission of evidence concerning a victim's prior sexual behavior which would be inadmissible under the rape shield law, no such circumstances exist here. This is not a case where the victim displays sexual knowledge inappropriate for her age. The conduct which A.S. attributed to her teenage boyfriend differed significantly from that which she attributed to Sanchez in that it did not involve penetration. The fact that she disclosed both incidents to a sister in the same conversation does not lead to an inference that one incident occurred and the other did not. It is clear from the offer of proof that A.S. described two separate and distinct incidents, distinguishing the boyfriend's touching from Sanchez' alleged penetration. We conclude that the district court did not abuse its discretion in excluding evidence of the boyfriend's conduct.

## 2. Evidence of Prior Uncharged Sexual Assaults

Sanchez' remaining assignments of error relate to the trial court's denial prior to trial of his motion in limine to exclude the testimony of L.G. and Au.G. that they had been sexually assaulted by Sanchez 22 years ago and 11 to 12 years ago, respectively, and the trial court's admission at trial of such testimony over Sanchez' objection. The admissibility of what has been characterized as "other crimes" or "similar acts" evidence is governed by rule 404(2), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The admissibility of other crimes evidence under rule 404(2) must be determined upon the facts of each case and is within the discretion of the trial court. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993).

Before the prosecution may offer other crimes evidence pursuant to rule 404(2) in a criminal case, it must first prove to the trial court, out of the presence of the jury, "by clear and convincing evidence that the accused committed the crime, wrong, or act." Rule 404(3). Sanchez argues that the State failed to meet this burden because of inconsistencies in the testimony of L.G. and Au.G. at the pretrial hearing held pursuant to rule 404(3). We have not specifically defined the phrase "clear and convincing evidence" as it is used in this rule. However, we have stated that under rule 404(2), evidence of prior uncharged crimes cannot be admissible "unless there is sufficient evidence that the crimes were actually committed and that the defendant committed them, to warrant submission to a jury if the other crimes had been charged." *State v. Timmerman*, 240 Neb. 74, 87, 480 N.W.2d 411, 419 (1992). In this case, L.G. and Au.G. testified that they were sexually assaulted at the ages of 13 and 5, respectively, and positively identified the assailant as Sanchez. L.G. testified that she gave birth to A.G. at the age of 14, after being impregnated by Sanchez. This evidence describes criminal conduct and would have been sufficient to warrant submission to a

trier of fact if Sanchez had been charged with such crimes. We conclude that the State met the threshold requirement imposed by rule 404(3) and therefore turn our consideration to the issue whether evidence of the uncharged prior crimes was admissible in this case under rule 404(2).

It is axiomatic that only relevant evidence is admissible. *State v. McManus, ante* p. 1, 594 N.W.2d 623 (1999); *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997). Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401. Accord *State v. McManus, supra*. However, rule 404(2) prohibits the admissibility of relevant evidence for the purpose of proving "the character of a person in order to show that he or she acted in conformity therewith." Stated another way, rule 404(2) "prohibits the admission of other bad acts evidence for the purpose of demonstrating a person's propensity to act in a certain manner." *State v. McManus, ante* at 6, 594 N.W.2d at 628. See, also, *In re Interest of Floyd B.*, 254 Neb. 443, 577 N.W.2d 535 (1998); *State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997). The reason for the rule is that such evidence, despite its relevance, creates the risk of a decision by the trier of fact on an improper basis. *State v. McManus, supra*. The exclusion of other crimes evidence offered to show a defendant's propensity protects the presumption of innocence and is " 'deeply rooted in our jurisprudence.' " *Id.* at 7, 594 N.W.2d at 628, quoting *People v Crawford*, 458 Mich. 376, 582 N.W.2d 785 (1998).

However, evidence of other crimes which is relevant for any purpose other than to show the actor's propensity is admissible under rule 404(2). "Evidence that is offered for a proper purpose is often referred to as having 'special' or 'independent' relevance,' which means its relevance does not depend on its tendency to show propensity." *State v. McManus, ante* at 8, 594 N.W.2d at 629.

In *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), the U.S. Supreme Court stated that the protection against admission of unduly prejudicial other crimes evidence emanates from four sources: (1) from the

requirement of Fed. R. Evid. 404(b) that the evidence be offered for a proper purpose; (2) from the relevancy requirement of Fed. R. Evid. 402; (3) from the assessment that the trial court must make under Fed. R. Evid. 403 to determine whether the probative value of the other crimes evidence is substantially outweighed by its potential for unfair prejudice; and (4) from the requirement of Fed. R. Evid. 105 that the trial court shall, upon request, instruct the jury that the other crimes evidence is to be considered only for the purpose for which it was admitted. We first recognized this analytical framework for reviewing the admissibility of other crimes evidence under the corresponding provisions of the Nebraska Evidence Rules in *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989), and have applied it in subsequent cases. See, e.g., *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998); *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998); *State v. Freeman, supra.* Recognizing that the first and second elements of this test are necessarily interrelated in that "independent relevance" is synonymous with "proper purpose," we restated the test in *State v. McManus, ante* at 9, 594 N.W.2d at 629, as follows:

[T]his court's rule 404(2) analysis considers whether the (1) evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith, (2) probative value of the evidence is substantially outweighed by its potential for unfair prejudice, and (3) trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted.

We apply this analysis in reviewing the admissibility of other crimes evidence in the present case.

In addressing the initial question of whether the evidence of other crimes was relevant for some purpose other than that prohibited by rule 404(2), we are hampered by the fact that the purpose for which this evidence was offered and received in this case is not clear from the record. In its "Notice of Intent to Present 404 Evidence," the State expressed its intent to present evidence of other acts of the defendant pursuant to rule 404(2), but did not state the purpose for which such evidence would be offered. Likewise, the record of the hearing held pursuant to rule

404(3) does not disclose the purpose for which the evidence was offered, and in its order, the trial court did not identify the purpose for which it would be received, stating only that "[t]he State is allowed to present such evidence . . . within the bounds set by Neb. Rev. Stat. § 27-404(2)."

A similar ambiguity of purpose was addressed by the court in *U.S. v. Murray*, 103 F.3d 310 (3d Cir. 1997), in which other crimes evidence was offered and received pursuant to Fed. R. Evid. 404(b), which is substantially similar to Nebraska's rule 404(2), without a clear statement of its purpose. The U.S. Court of Appeals stated that trial judges should "exercise particular care" in admitting other crimes evidence for two reasons:

> First, the line between what is permitted and what is prohibited under Rule 404(b) is sometimes quite subtle. Second, Rule 404(b) evidence sometimes carries a substantial danger of unfair prejudice and thus raises serious questions under Fed.R.Evid. 403. Therefore, it is advisable for a trial judge to insist that a party offering Rule 404(b) evidence place on the record a clear explanation of the chain of inferences leading from the evidence in question to a fact "that is of consequence to the determination of the action." [Citation omitted.] And it is likewise advisable for the trial court to place on the record a clear explanation of the basis for its ruling on the admission of the evidence. Not only do these procedures help to ensure that sensitive Rule 404(b) rulings are made with care (and thus to diminish the likelihood that these rulings will result in reversals), but these procedures greatly assist the process of appellate review.

*U.S. v. Murray*, 103 F.3d at 316. Similarly, the Sixth Circuit requires that the specific purpose of other crimes evidence be stated by its proponent so that the trial court can make a determination of its materiality. *U.S. v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996). See, also, 2 Joseph M. McLaughlin, Weinstein's Federal Evidence § 404.23[5][b] at 404-138-39 (2d ed. 1999) ("court should require the proponent of [other crimes] evidence to identify the specific purpose for which the evidence is offered" and if purpose is not clear, "should not hesitate to press counsel to provide a clear explanation at sidebar").

We agree with these authorities and therefore hold that henceforth, the proponent of evidence offered pursuant to rule 404(2) shall, upon objection to its admissibility, be required to state on the record the specific purpose or purposes for which the evidence is being offered and that the trial court shall similarly state the purpose or purposes for which such evidence is received. See *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996). Any limiting instruction given upon receipt of such evidence should likewise identify only those specific purposes for which the evidence was received. See *U.S. v. Merriweather*, 78 F.3d at 1077 (finding reversible error in limiting instructions which recited all permissible purposes of other crimes evidence set forth in Fed. R. Evid. 404(b), stating trial court must " 'clearly, simply, and correctly' instruct the jury as to the *specific* purpose for which they may consider the evidence," quoting *U.S. v. Johnson*, 27 F.3d 1186 (6th Cir. 1994)). See, also, NJI2d Crim. 5.3, comment (limiting instruction "must call the jury's attention to the particular evidence being limited to a particular use"). In the present case, we will consider only those purposes for the other crimes evidence which are urged in the State's brief: intent, opportunity, motive, and identity.

## (a) Intent

We have held that other crimes evidence may be offered for the purpose of proving intent where intent is an element of the charged offense. See, e.g., *State v. Styskal*, 242 Neb. 26, 493 N.W.2d 313 (1992). However, intent is not an element of first degree sexual assault as defined by § 28-319(1)(c), the offense with which Sanchez was charged. See, *State v. Koperski*, 254 Neb. 624, 578 N.W.2d 837 (1998); *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994). To obtain a conviction in this case, the State needed to prove only that Sanchez subjected A.S. to sexual penetration at a time when he was over the age of 19 and she was under the age of 16. See § 28-319(1)(c). The intent with which the charged act was committed was therefore not a fact that is of consequence to the determination of this action and cannot provide a basis for independent relevance of the other crimes evidence.

## (b) Opportunity

In *State v. Newman*, 250 Neb. 226, 241, 548 N.W.2d 739, 750 (1996), we held that because other crimes evidence placed the defendant "in the area where the sexual assault occurred near the time it occurred," it was properly offered for the purpose of showing that the defendant had the opportunity to commit the crime in question. Here, the assault occurred in Sanchez' home, where it is undisputed A.S. frequently visited. The contested issue is not whether Sanchez had an opportunity to assault A.S., but, rather, whether he in fact did commit the assault. We conclude that because opportunity was not a fact of consequence in this case, it is not a basis upon which independent relevance of other crimes evidence can be asserted under rule 404(2).

## (c) Motive

Motive is defined as that which leads or tempts the mind to indulge in a criminal act. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996); *State v. Wilson*, 225 Neb. 466, 406 N.W.2d 123 (1987). In *State v. Sherrod*, 229 Neb. 128, 132, 425 N.W.2d 616, 619-20 (1988), we held that while motive need not be proved in a prosecution for first degree sexual assault, it constituted "strong circumstantial evidence against a defendant" and therefore could be a subject of proof by other crimes evidence. However, we subsequently held that " '[w]hile proof of motive is not an element of first degree murder, any motive for the crime charged is certainly relevant to the State's proof of the intent element.' " *State v. McBride*, 250 Neb. at 651, 550 N.W.2d at 671, quoting *State v. Bronson*, 242 Neb. 931, 496 N.W.2d 882 (1993). While there may be circumstances where intent is not an element of the charged offense but motive is nevertheless a fact of consequence to the determination of the action, we perceive no such circumstances in this case.

The State argues that the other crimes evidence served to prove Sanchez' "motive to obtain sexual gratification from young girls" which is "foreign to most adults who are not sexually attracted to children." Brief for appellee at 33. The State further argues that "many adults find it hard to believe that there are people who are sexually attracted to kids." *Id.* Aside from its dubious assertion that adult members of our society are gener-

ally unaware of the existence of pedophiles, this argument illustrates that under the guise of motive, the State is really attempting to prove propensity, i.e., that one who in the past was motivated to seek sexual gratification from children is likely to do so again. While the facts underlying this conclusion are logically relevant, they lack independent relevance and are thus inadmissible for this purpose under rule 404(2). The State has not articulated a legitimate explanation of why motive was a fact of consequence to the determination of Sanchez' guilt, and we therefore conclude that the other crimes evidence cannot have independent relevance with respect to motive.

### (d) Identity

A plea of not guilty challenges all elements of the crime charged, requiring the State to prove the identity of the perpetrator. *State v. Sherrod, supra.* Thus, identity was a fact of consequence in this case which could serve as a basis for independent relevance of other crimes evidence, provided that such evidence had probative value as to the identity of the person who committed the crime with which Sanchez was charged.

The probative value of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that a particular fact exists and the distance of the fact from the ultimate issues of the case. *State v. Merrill,* 252 Neb. 736, 566 N.W.2d 742 (1997); *State v. Newman,* 250 Neb.. 226, 548 N.W.2d 739 (1996). In evaluating other crimes evidence in criminal prosecutions, we have stated that it must be so related in time, place, and circumstances to the offense or offenses charged as to have substantial probative value in determining the guilt of the accused. *State v. Buechler,* 253 Neb. 727, 572 N.W.2d 65 (1998); *State v. Hunt,* 220 Neb. 707, 371 N.W.2d 708 (1985), *disapproved on other grounds, State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706 (1986); *State v. Keithley,* 218 Neb. 707, 358 N.W.2d 761 (1984).

In *State v. Carter,* 246 Neb. 953, 524 N.W.2d 763 (1994), *overruled on other grounds, State v. Freeman,* 253 Neb. 385, 571 N.W.2d 276 (1997), we agreed with the reasoning of *State v. Bible,* 175 Ariz. 549, 858 P.2d 1152 (1993), that other crimes evidence may have probative value as to identity where there are

overwhelming similarities between it and the charged offense, such that the crimes are so similar, unusual, and distinctive that the trial judge could reasonably find that they bear the same signature. In *State v. Freeman, supra,* a prosecution for eight counts of first degree sexual assault, we concluded that evidence regarding a previous sexual assault committed by the defendant was properly admitted on the issue of identity where the manner in which it was committed and certain statements made by the assailant to the victim during its commission bore marked similarities to each of the charged offenses.

In both *State v. Carter, supra,* and *State v. Freeman, supra,* there was physical evidence that a sexual assault had occurred but no eyewitness identification of the assailant, thus leaving open the possibility that someone other than the defendant had committed the crime. In each of those cases, the other crimes evidence was held to be probative on the issue of the identity of the assailant and therefore properly admitted for that purpose. In the present case, there is no physical evidence of penetration necessary to establish first degree sexual assault, although there is medical testimony that the absence of such evidence does not mean that such an assault did not occur. The only evidence of the assault is the testimony of A.S., who described what happened and unequivocally identified Sanchez as the assailant. There is no evidence upon which the jury could have concluded that the assault occurred but that someone other than Sanchez committed it. Thus, assuming without deciding that the other crimes evidence bears the requisite similarity to the charged offense, it could have no probative value on the issue of identity under the facts of this particular case. If the jury believed the testimony of A.S. that the acts which constitute first degree sexual assault occurred, it would have no basis for identifying anyone other than Sanchez as the assailant and his prior conduct would prove nothing necessary for conviction. On the other hand, if the jury did not believe the testimony of A.S. regarding the occurrence of the assault, it would be left with no evidence that a crime had been committed and thus no assailant to identify. Sanchez' prior acts could not fill this evidentiary void.

For the reasons stated, we conclude that the other crimes evidence in this case lacked the independent relevance which is

312

a prerequisite to admissibility under rule 404(2). We therefore need not address the second and third analytical steps set forth in *State v. McManus, ante* p. 1, 594 N.W.2d 623 (1999), in order to reach our conclusion that the trial court abused its discretion in receiving such evidence. In a jury trial of a criminal case, an erroneous evidential ruling results in prejudice to the defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Buechler, supra*; *State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996). The testimony of A.S., if believed by the jury, was sufficient to obtain a conviction, but given the absence of physical evidence and Sanchez' testimony denying the assault, the evidence of guilt was certainly not overwhelming. Accordingly, we cannot conclude that the erroneous admission of other crimes evidence was harmless beyond a reasonable doubt, and we therefore reverse, and remand for a new trial.

## V. CONCLUSION

The trial court did not err by refusing to admit evidence regarding A.S.' sexual history predating the charged offense. However, the admission of evidence regarding Sanchez' prior uncharged criminal conduct constituted an abuse of discretion and reversible error because such evidence was not relevant for a purpose other than showing Sanchez' character or actions in conformity therewith, and was thus inadmissible under rule 404(2). The judgment of conviction is therefore reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.