STATE OF NEBRASKA, APPELLEE, V.
RONALD LEE EGGER, APPELLANT.

601 N.W. 2d 785

Filed October 12, 1999.   Nos. A-98-1119, A-98-1120.

Gregory J. Beal, of Gregory J. Beal & Associates, P.C., for appellant.

Don Stenberg, Attorney General, and Donald J.B. Miller for appellee.

HANNON, MUES, and INBODY, Judges.

HANNON, Judge.

## INTRODUCTION

In 1997, Ronald Lee Egger was separately charged with and convicted of first degree sexual assault on a minor and incest for acts committed against his minor stepdaughter. The charges were consolidated for trial and are heard together on appeal. Egger alleges the trial court erred in (1) admitting evidence of his physical abuse of the victim and her family, (2) refusing to admit testimony from Egger's therapist that Egger looked astonished when he related the sexual allegations to the therapist and that he denied the sexual abuse, (3) denying his motion for new trial based on newly discovered evidence, and (4) imposing an excessive sentence. Egger also alleges error in three other inconsequential matters which we discuss and reject below. We find that (1) the evidence of his physical violence was admissible as relevant to explain the victim's delay in reporting the sexual abuse, (2) the offered testimony of his therapist was inadmissible hearsay and improper character evidence, (3) the trial court

did not abuse its discretion on denying the motion for a new trial because the motion was filed more than 10 days after the verdict and the offered newly discovered evidence was cumulative and related only to the credibility of witnesses, (4) the sentence was not excessive, and (5) the other assignments of error were improper and otherwise unavailing. Accordingly, we affirm.

## FACTS

■ In reviewing a criminal conviction for prejudicial error, we view the facts most favorably for the State. See, e.g., *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998). Further, we do not resolve jury questions such as contradictions in the evidence or credibility of the witnesses. *Id.* Our summary of the evidence is given with these rules in mind.

Egger married Melodie Egger in October 1992, and they lived in Kimball, Nebraska. Melodie Egger had three daughters from a prior marriage, M.D., the victim; D.D.; and T.D., who all lived with Melodie Egger and Egger. At the time of Melodie Egger's marriage to Egger, M.D., the oldest daughter, was in the sixth grade and 11 years old.

M.D. testified that Egger began sexually abusing her in May 1995 and continued doing so until she was placed with a foster family in January 1997. At trial, M.D. related graphic details of numerous instances of oral and vaginal intercourse. In our description of the facts, we avoid relating the specific details of Egger's sexual activities with M.D. We simply note that at trial, M.D. described many acts of sexual penetration between Egger and M.D. occurring in Cheyenne County as well as Kimball County and Iowa between May 1, 1995, and January 24, 1997. We also note that Egger did not object at trial to the admission of the acts occurring outside Cheyenne County.

The first act of intercourse occurred in M.D.'s bedroom in Kimball. While Melodie Egger was at work and D.D. and T.D. were asleep on another floor of the home, Egger came into M.D.'s room and talked about having sex with her. M.D. expressed worries about becoming pregnant, but Egger explained that he had been "fixed" and that "no one [could] have babies with [him]." He then undressed and had M.D. look at and feel the vasectomy scar on his scrotum. M.D. testified in detail

about the scar and the fact that Egger was uncircumcised, accurately describing the scar's texture, position, and size. Her description matched the descriptions given by Egger's former wife and a physician who examined Egger. A few other instances of intercourse occurred between Egger and M.D. before the family moved from Kimball (in Kimball County) to Sydney, Nebraska (in Cheyenne County).

In December 1996, Egger took M.D. to see Egger's father in Iowa, near Council Bluffs. Along the way, they shopped in a mall in Council Bluffs, where both bought a pair of shoes and where Egger also bought a red "teddy" from a lingerie store. Rather than stay at Egger's father's house, the two stayed in a motel, where Egger had M.D. wear the lingerie and engage in sexual intercourse with him.

In total, Egger subjected M.D. to approximately 35 to 40 acts of sexual penetration between May 1, 1995, and January 24, 1997. The testimony at trial described most of the acts as occurring in Cheyenne County, such as in Egger's bedroom, in his home office, in his recliner, in M.D.'s bedroom, and in the family's camper parked near the house.

Despite opportunities to do so, M.D. did not report the sexual abuse until after January 27, 1997, when she was put into foster care. Throughout the time Egger was abusing her, he told M.D. that she should not disclose their sexual activities and that she had "better watch out" if she ever did. The evidence would support a finding that M.D.'s fear of Egger was real, based on the testimony that M.D. observed Egger physically abuse her and her family. For example, Egger had thrown a hammer at M.D., hit her with his hand, and kicked her. He also hit D.D. and T.D. and beat Melodie Egger to the point where she needed hospitalization. In January 1997, Egger was arrested and subsequently pled guilty to assault for hitting T.D. in the face with his fist after he had upset the kitchen table while the family was eating dinner. M.D. testified that she was afraid of Egger for herself and her sisters.

After Egger's sexual abuse was reported, M.D. underwent a vaginal exam in July 1997, but no physical evidence of trauma was found. However, the State's medical expert testified that physical signs are not seen in abuse cases approximately 70 per-

cent of the time, particularly after time has passed between the exam and the last incident. Egger produced medical testimony that a vaginal exam would be expected to show some physical evidence of abuse as described by M.D.

Egger denied having any sexual contact with M.D. and attacked her credibility at trial, claiming she had fabricated her testimony. The jury found Egger guilty of sexual assault in the first degree, pursuant to Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1995), and incest, pursuant to Neb. Rev. Stat. § 28-703(1) (Reissue 1995), and the trial court sentenced him to concurrent sentences of 25 to 40 years' and 15 to 20 years' imprisonment respectively. Egger unsuccessfully moved for a new trial, and he now appeals his convictions and sentences.

## ASSIGNMENTS OF ERROR

Egger assigns six errors, which we have reordered as follows: The trial court erred in (1) overruling Egger's motion in limine regarding his physical abuse of the family, (2) making various rulings on the reception of evidence and in overruling Egger's objections to evidence, (3) denying Egger's motion for a new trial based on newly discovered evidence, (4) imposing excessive sentences, (5) committing any plain error on the record, and (6) coaching the prosecutor on how to offer hearsay evidence. Further, Egger argues but did not assign error on the sufficiency of the evidence to support the verdict and on refusing to admit testimony from his therapist that Egger looked astonished and that he denied the sexual abuse.

## STANDARD OF REVIEW

With respect to Egger's appeal regarding the admission of his violent acts against the family and the exclusion of his therapist's statements, we note: "In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence." *State v. Carter*, 255 Neb. 591, 596-97, 586 N.W.2d 818, 825 (1998). With respect to Egger's motion for new trial, "[t]he standard of review for the denial of a motion for new trial is whether there was an abuse of

discretion by the trial court." *State v. Krutilek*, 5 Neb. App. 853, 865, 567 N.W.2d 797, 805 (1997). In regard to his claim of excessive sentences, "[a] sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court." *State v. Pattno*, 254 Neb. 733, 734, 579 N.W.2d 503, 505 (1998), *cert. denied* 525 U.S. 1068, 119 S. Ct. 796, 142 L. Ed. 2d 659 (1999).

"A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition." *Cedars Corp. v. Sun Valley Dev. Co.*, 253 Neb. 999, 1004, 573 N.W.2d 467, 471 (1998).

## ANALYSIS

*Motion in Limine.*

Egger made a motion in limine and objected throughout trial to any testimony regarding his physical abuse of M.D., D.D., T.D., and Melodie Egger. The State offered the testimony for the purpose of explaining why M.D. did not report the sexual abuse when she had the opportunity—because Egger had threatened her and she witnessed his violent tendencies against her and her family, making her fear real. The trial court admitted the evidence at trial. Egger argues its admission constituted error.

Specifically, Egger made a continuing objection to testimony from several witnesses regarding his physical violence toward other family members. The evidence included an instance when Egger threw a hammer at M.D. and hit her in the leg, an instance when Egger pushed and kicked M.D. before school, another instance when he struck T.D. with his fist, yet another instance when he beat Melodie Egger to the point where she needed hospitalization, and several instances that M.D. testified to that "[h]e just hit us all the time."

> [B]ecause overruling a motion in limine is not a final ruling on admissibility of evidence and, therefore, does not present a question for appellate review, a question concerning admissibility of evidence which is the subject of a motion in limine is raised and preserved for appellate review by an appropriate objection to the evidence during trial.

*State v. Coleman*, 239 Neb. 800, 811, 478 N.W.2d 349, 356 (1992). We review the trial court's decision in admitting the evidence rather than when denying Egger's motion in limine.

Neb. Rev. Stat. § 27-404 (Reissue 1995) governs evidence of other crimes, wrongs, and acts. A hearing was held pursuant to § 27-404(3), and Egger stipulated that if the judge heard the evidence of his acts of violence, the judge would find clear and convincing evidence that they had occurred. Once the judge was satisfied these acts occurred, the admissibility of the evidence rested on the following subsection:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

§ 27-404(2). The question becomes whether the trial court admitted the evidence of physical abuse for a proper purpose.

"It should be noted that [§ 27-]404(2)'s list of permissible purposes is not exhaustive. 'The "purposes" set forth in [§ 27-]404(2) are illustrative only and not intended to be exhaustive or mutually exclusive.' " *State v. Perrigo*, 244 Neb. 990, 1001, 510 N.W.2d 304, 311 (1994). Whether the evidence is admissible for any proper purpose under § 27-404(2) rests within the discretion of the trial court. *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998). " 'Evidence that is offered for a proper purpose is often referred to as having "special" or "independent relevance," which means its relevance does not depend on its tendency to show propensity.' " *State v. Sanchez*, 257 Neb. 291, 305, 597 N.W.2d 361, 373 (1999) (quoting *State v. McManus*, 257 Neb. 1, 594 N.W.2d 623 (1999)). Recognizing that "independent relevance" is synonymous with "proper purpose," *Sanchez* stated:

> "[T]his court's [§ 27-]404(2) analysis considers whether the (1) evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith, (2) probative value of the evidence is substantially outweighed by its potential for unfair prejudice, and (3) trial court, if requested, instructed

the jury to consider the evidence only for the limited purpose for which it was admitted."
257 Neb. at 306, 597 N.W.2d at 373.

*Sanchez* prescribed that henceforth any party wishing to offer evidence pursuant to § 27-404(2) must state on the record the specific purpose for which it is offered, and likewise the trial court must state the specific purpose for which it is received, and a limiting instruction, when requested, must explain the specific purpose to the jury. Unlike *Sanchez*, here the State's purpose for offering this evidence was clear on the record. The trial court did not state the purpose for which it received the evidence, but that fact is not fatal here because *Sanchez* ruled "henceforth."

Considering the first prong of analysis, the State offered evidence of Egger's acts of physical violence not to show that he acted in conformity therewith, but to explain why M.D. delayed in reporting his sexual abuse. This purpose has independent relevance, showing something wholly separate from Egger's propensity to commit sex crimes or crimes of violence. Egger claimed that M.D. fabricated the allegations against him. He further argued that because M.D. had reported sexual abuse by her biological father when she was in the third grade, she would have known what Egger did to her was wrong and would have promptly reported it after the first occurrence. Because she did not, Egger argued she lacked credibility. The State offered the evidence of physical violence to counter Egger's arguments. We consider only this purpose because the evidence does not fit under the other purposes listed by the State (intent, plan, purpose, motive, and design). The evidence would tend to give the jury a better understanding of the surrounding circumstances of the sexual abuse M.D. suffered. We do not believe the trial court abused its discretion in admitting this evidence for this purpose.

Under the second prong, we look at the probative value of the evidence balanced against any prejudicial effect. Egger objected to this evidence as more prejudicial than probative. This balancing rests in the discretion of the trial court, and on these facts and the purpose listed above, we do not find an abuse of that discretion. As for the third prong, the record does not show that Egger requested any limiting instruction on the purpose of this evidence. In fact, the parties and the trial court discussed a lim-

iting instruction regarding hearsay evidence pertaining to the credibility of witnesses and opinion and reputation evidence for M.D.'s truthfulness; however, Egger approved that instruction in final form without any mention to the evidence at issue here.

*Various Rulings and Egger's Emotional State.*

■ Egger assigns error to "various rulings on reception of evidence, or in overruling defense counsel's objections." When assigning error to the admission or rejection of evidence, appropriate references must be made to specific evidence against which objection is urged. *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). "It is no[t] part of the duty of this court to search a voluminous record for the purpose of ascertaining if there is error in it. . . . The function of an assignment of error is to specifically point out the exact instance of the alleged error." *Erving v. State*, 174 Neb. 90, 101-02, 116 N.W.2d 7, 16 (1962). Egger's assignment of error is too broad.

However, Egger argues, but does not assign, that the trial court improperly kept out evidence of his emotional state. The State then responded to this argument in its brief. "[W]hen an assignment of error is generalized and vague, an appellate court will review the appeal if the specific contention made by the criminal defendant is set forth in his or her brief and the State, through its brief, has argued in response to that contention." *State v. Harper*, 2 Neb. App. 220, 223, 508 N.W.2d 584, 586 (1993). While we do not endorse this structure or style of brief writing, we take the latter argument to be the specific instance contemplated in the overly broad assignment of error.

We review questions of law with an obligation to reach our conclusion independent of the determination made by the trial court. See *Medical Protective Co. v. Schrein*, 255 Neb. 24, 582 N.W.2d 286 (1998).

Egger attempted to offer through his therapist, Dr. Laura Gaudet, (1) that she observed Egger as "astonished" when he related to her the sex allegations made against him, (2) that Egger never admitted to her that he had sexual intercourse with M.D., and (3) that Egger denied having sexual intercourse with M.D. We believe the trial court properly excluded this testimony for two reasons.

First, this testimony was improper under Neb. Rev. Stat. § 27-608(2) (Reissue 1995), which reads in pertinent part, "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence." We view this testimony as evidence used to bolster the credibility and believability of Egger at trial. Because Egger attempted to bring this in through a separate witness, we find that this evidence was inadmissible as extrinsic evidence of a specific instance of conduct to support his credibility. It also appears from the record that Egger attempted to have Dr. Gaudet testify as to her opinion, but he did not make an offer of proof on that testimony after the trial court sustained the State's objection.

This evidence was also clearly hearsay, not subject to the exception for medical diagnosis. We take both of Egger's oral statements and his look of astonishment as inadmissible hearsay. See Neb. Rev. Stat. §§ 27-801(1) and 27-802 (Reissue 1995). All three are statements because they assert what Egger wished to prove by offering them, making them inadmissible as hearsay. We also find that these statements do not fall under the medical diagnosis exception, which covers "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Neb. Rev. Stat. § 27-803(3) (Reissue 1995). Dr. Gaudet was one of Egger's anger therapists, and his statements to her regarding his astonishment at the charges and his innocence do not appear to be made for the purposes enumerated in the exception to the rule. We find the trial court properly excluded the testimony.

*Motion for New Trial.*

After the verdict and sentencing, Egger moved for a new trial based on (1) irregularity in the proceedings and an abuse of discretion preventing a fair trial, (2) an excessive sentence, (3) insufficient evidence to support the verdict, (4) the verdict and judgment of the trial court being contrary to law, (5) error of law occurring at the trial and excepted to by Egger, and (6) newly

discovered evidence. The trial court followed Neb. Rev. Stat. §§ 29-2101 to 29-2103 (Reissue 1995) when ruling on Egger's motion. According to § 29-2103, a motion for new trial must be brought within 10 days of the verdict unless the motion is based on newly discovered evidence. See, also, *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253 (1993) (holding that motion for new trial not filed in conformity with statutory requirements as to time may not be considered on appeal). The jury found Egger guilty on August 12, 1998, and he filed his motion on September 28. Accordingly, the trial judge properly ignored all grounds beyond the newly discovered evidence as untimely.

Egger's newly discovered evidence consisted of a statement by T.D. that M.D. had told her she never had sex with Egger and that she had made up the whole story. T.D. stated she did not come forward with this until after the trial because M.D. had threatened her to keep quiet. The trial court found this "new" evidence to be cumulative to the evidence already presented at trial and evidence only going to M.D.'s credibility. See *State v. Hortman*, 207 Neb. 393, 299 N.W.2d 187 (1980) (newly discovered evidence must, inter alia, be relevant and credible, not merely cumulative, and involve something other than credibility of witness). Based on the evidence, we find no abuse of discretion in the trial court's decision.

*Excessive Sentences.*

"Sexual assault in the first degree is a Class II felony. The sentencing judge shall consider whether the actor caused serious personal injury to the victim in reaching a decision on the sentence." § 28-319(2). A Class II felony is punishable by a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 1995). Incest is a Class III felony. § 28-703(2). A Class III felony is punishable by a minimum of 1 year's imprisonment and a maximum of 20 years' imprisonment. § 28-105. Here, the trial court sentenced Egger within the applicable limits for each charge and properly considered the factors listed by statute. The record indicates no abuse of discretion by the trial court.

*Plain Error.*

█ The Nebraska Supreme Court has recently reaffirmed several notions regarding the doctrine of plain error.

Errors which are neither assigned nor argued will not be considered by an appellate court. . . . Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. . . . Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

(Citations omitted.) *State v. Paul*, 256 Neb. 669, 677, 592 N.W.2d 148, 155 (1999). See, also, Neb. Ct. R. of Prac. 9D(1)d (rev. 1996). Plain error applies when an appellate court discovers error on the record; it is not a broad assertion to be assigned by the parties on appeal.

*Coaching Prosecutor.*

█ Egger assigns, but does not argue, that the trial court coached the prosecutor on admitting hearsay evidence. Absent plain error, an appellate court will not address errors assigned but not discussed in the brief. See, e.g., *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997); *State v. Privat*, 251 Neb. 233, 556 N.W.2d 29 (1996); rule 9D(1)d. This assignment fails because Egger did not discuss it and because we could find no evidence of such conduct on the record.

*Sufficiency of Evidence.*

"[E]rrors which are argued but not assigned will not be considered by an appellate court." *Pantano v. McGowan*, 247 Neb. 894, 897, 530 N.W.2d 912, 914 (1995). Accord *Manske v. Manske*, 246 Neb. 314, 518 N.W.2d 144 (1994). Egger argues but does not assign error regarding the sufficiency of the evidence. This argument fails because M.D.'s testimony, if believed by the jury, is clearly sufficient to support the jury's verdict on both counts. See *State v. Fahlk*, 246 Neb. 834, 524 N.W.2d 39 (1994) (stating that appellate court will not set aside guilty ver-

dict based on relevant evidence; conviction may be set aside only when evidence lacks probative force as matter of law).

## CONCLUSION

For the above-stated reasons, we do not believe Egger's appeal of his convictions can succeed upon any grounds he advances. Finding no error, we affirm.

AFFIRMED.