IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. ALVARADO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
TELESFORO ALVARADO, APPELLANT.

Filed April 15, 2014.    No. A-13-417.

Appeal from the District Court for Scotts Bluff County: LEO DOBROVOLNY, Judge. Affirmed.

William E. Madelung, of Madelung Law Office, for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

IRWIN, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Telesforo Alvarado appeals his conviction of one count of distributing a controlled substance (methamphetamine) within 1,000 feet of a playground in violation of Neb. Rev. Stat. § 28-416(4)(A)(ii) (Cum. Supp. 2012). Alvarado asserts that the district court for Scotts Bluff County erred in refusing to give the "entrapment" jury instruction, denying his motion for new trial, and imposing an excessive sentence. He also asserts that his trial counsel was ineffective. We affirm.

## II. BACKGROUND

Alvarado was one of a number of individuals identified by Brian Ross as persons who sell methamphetamine in Scotts Bluff County. Ross himself was arrested for selling methamphetamine and decided to cooperate with authorities in exchange for the dismissal and/or reduction of his pending drug charges. Ross informed law enforcement that he had purchased

methamphetamine from Alvarado in the past. Ross agreed to conduct controlled buys of methamphetamine from Alvarado on June 5 and 6, 2012.

On June 5, 2012, Ross met with Nebraska State Patrol Investigators Brian Buxbaum and Brian Eads. Ross' person and vehicle were searched to ensure that there was no money or contraband belonging to Ross. He was equipped with audio and video recording devices and given $100 in copied bills to purchase methamphetamine from Alvarado. Buxbaum and Eads followed Ross to Alvarado's residence and conducted audio and visual surveillance. Ross entered Alvarado's home. Several minutes later, Ross exited Alvarado's home. He gave Alvarado a ride to a restaurant, and then he met with Buxbaum and Eads at a designated meeting point. Buxbaum and Eads followed Ross' vehicle the entire time. At the meeting point, Ross' person and vehicle were again searched. The only money found in the vehicle was a small amount of money ($10 or less) that Ross said Alvarado had given him for gas money. Ross turned over the suspected methamphetamine (in two yellow baggies) and recording equipment to law enforcement. The substance Ross acquired from Alvarado field-tested positive for methamphetamine, and the results were confirmed by the Nebraska State Patrol Criminalistics Laboratory (Crime Lab). The total net weight of methamphetamine was 0.76 of a gram.

On June 6, 2012, Ross participated in another controlled buy of methamphetamine from Alvarado. Prior to the buy, Ross' person and vehicle were searched by Buxbaum and Eads to ensure that there was no money or contraband belonging to Ross. He was again equipped with audio and video recording devices and given $100 in copied bills to purchase methamphetamine from Alvarado. Buxbaum and Eads followed Ross to Alvarado's residence and conducted audio and visual surveillance. This time, Ross followed Alvarado into Alvarado's backyard. A few minutes later, Ross returned to his vehicle and drove to the designated meeting point. Buxbaum and Eads followed Ross' vehicle the entire time. At the meeting point, Ross' person and vehicle were again searched. Ross turned over the suspected methamphetamine (in one yellow baggie) and recording equipment to law enforcement. The substance Ross acquired from Alvarado field-tested positive for methamphetamine, and the results were confirmed by the Crime Lab. The total net weight of methamphetamine was 0.84 of a gram.

Alvarado's residence was across the street from a park that had a playground. According to Buxbaum, the distance across the street to where the actual gravel area of the playground began was 161 feet 8 inches.

The State charged Alvarado with two counts of distribution of a controlled substance (methamphetamine) on or near a playground, both Class ID felonies.

Trial was held on February 6 and 8, 2013. Buxbaum, Eads, Ross, and two forensic scientists from the Crime Lab testified. DVD recordings of both controlled buys were among the exhibits received into evidence.

At the conclusion of all the evidence, a jury instruction conference was held. Although Alvarado requested an instruction on the defense of entrapment, the court declined to give it. The court found that the record failed to show entrapment.

The jury found Alvarado guilty of one count of distribution of a controlled substance (methamphetamine) within 1,000 feet of a playground. Specifically, the jury found Alvarado guilty of count I, which had a charging date of June 5, 2012. The jury found Alvarado not guilty on the second count. The trial court accepted the jury's verdict. The district court denied

Alvarado's motion for new trial. Alvarado was sentenced to 8 to 20 years' imprisonment (including a 3-year mandatory minimum), with 175 days' credit for time served. Alvarado has timely appealed his conviction and sentence to this court.

## III. ASSIGNMENTS OF ERROR

Alvarado assigns (1) the trial court erred by refusing to give the "entrapment" jury instruction requested by Alvarado, (2) the trial court abused its discretion by denying his motion for new trial, (3) his trial counsel was ineffective, and (4) the sentence imposed by the district court was excessive.

## IV. STANDARD OF REVIEW

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Kass*, 281 Neb. 892, 799 N.W.2d 680 (2011).

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Pereira*, 284 Neb. 982, 824 N.W.2d 706 (2013).

## V. ANALYSIS

### 1. ENTRAPMENT INSTRUCTION

Alvarado argues that the district court erred in denying his request for a jury instruction on the defense of entrapment. Because Alvarado was convicted on only count I, we address only the controlled buy of June 5, 2012. We find that on the record before us, the evidence does not warrant an entrapment instruction.

When a defendant raises the defense of entrapment, the trial court must determine, as a matter of law, whether the defendant has presented sufficient evidence to warrant a jury instruction on entrapment. *State v. Kass*, 281 Neb. 892, 799 N.W.2d 680 (2011). In Nebraska, entrapment is an affirmative defense consisting of two elements: (1) the government induced the defendant to commit the offense charged and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense. *Id*. The burden of going forward with evidence of government inducement is on the defendant. *Id*. In assessing whether the defendant has satisfied this burden, the initial duty of the court is to determine whether there is sufficient evidence that the government has induced the defendant to commit a crime. *Id*. The court makes this determination as a matter of law, and the defendant's evidence of inducement need be only more than a scintilla to satisfy his or her initial burden. *Id*. To be more than a scintilla, evidence cannot be vague, conjectural, or the mere suspicion about the existence of a fact, but must be real and of such quality as to induce conviction. *State v. Swenson*, 217 Neb. 820, 352 N.W.2d 149 (1984).

In determining whether the court in this case erred in refusing to give the entrapment instruction, we must review whether Alvarado satisfied his initial burden of demonstrating that there was more than a scintilla of evidence of inducement. Inducement can be any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense, including persuasion, fraudulent representation, threats, coercive tactics, promise of reward, or pleas based on need, sympathy, or friendship. *State v. Kass, supra*. Inducement requires something more than a government agent or informant suggested the crime and provided the occasion for it. *Id*. Inducement consists of an opportunity plus something else, such as excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, noncriminal type of motive. *Id*.

Alvarado claims he was induced to commit the offense because Ross had entered into a plea agreement and therefore had incentive to cooperate with law enforcement. Alvarado does not explain how Ross' private motivation for purchasing methamphetamine induced Alvarado to commit the offense. Furthermore, "'[t]he lone fact that an undercover police officer, personally or through an informant, offers to purchase or obtain [a controlled substance] is not an inducement to commit a crime resulting in the availability of entrapment as a defense for the seller of the [controlled substance].'" *State v. Graham*, 259 Neb. 966, 975, 614 N.W.2d 266, 272 (2000) (quoting *State v. Swenson, supra*). "An undercover police officer's merely affording the defendant a favorable opportunity for commission of a crime already conceptualized in the accused is not entrapment." *State v. Swenson*, 217 Neb. at 825, 352 N.W.2d at 153.

Here, the record contains no evidence to suggest that Ross did anything more than provide Alvarado with the opportunity to sell methamphetamine. The DVD of the transaction shows that Ross did not even mention the word "methamphetamine" to Alvarado. Ross simply produced the money, and Alvarado produced the yellow baggies, later confirmed to contain methamphetamine. The entire conversation between Ross and Alvarado could be characterized as small talk. Ross did not engage in persuasion, fraudulent representation, threats, coercive tactics, promise of reward, or pleas based on need, sympathy, or friendship. See *State v. Kass*, 281 Neb. 892, 799 N.W.2d 680 (2011). The evidence establishes that Alvarado was ready and willing to sell methamphetamine to Ross. The fact that the government, through the cooperating individual, provided Alvarado with a favorable opportunity to do that which Alvarado was otherwise ready and willing to accomplish does not constitute entrapment. *State v. Connely*, 243 Neb. 319, 499 N.W.2d 65 (1993). We conclude that Alvarado's evidence of the element of inducement was not more than a scintilla of evidence, and that thus, he did not satisfy his burden of going forward. Accordingly, we need not and do not analyze the sufficiency of the evidence of the second element of entrapment, predisposition. *State v. Jimenez*, 283 Neb. 95, 808 N.W.2d 352 (2012) (appellate court not obligated to engage in analysis not needed to adjudicate case and controversy before it).

Alvarado's theory that he was merely returning drugs that Ross had previously left with him for safekeeping is not supported by the evidence adduced at trial. As noted above, the DVD of the transaction, as well as testimony by Ross, reveals that money was given in exchange for the drugs.

## 2. MOTION FOR NEW TRIAL

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Kass, supra.*

Neb. Rev. Stat. § 29-2103 (Reissue 2008) states that a motion for new trial must be in writing and must state the grounds upon which the motion is based. Neb. Rev. Stat. § 29-2101 (Reissue 2008) sets forth seven grounds for a motion for new trial. Pursuant to § 29-2103(3), the motion for new trial must be filed within 10 days after the verdict is rendered for the grounds set forth in § 29-2101(1), (2), (3), (4), or (7). Section 29-2101(5) deals with newly discovered evidence which the defendant "could not with reasonable diligence have discovered and produced at the trial," and § 29-2103(4) allows for a motion for new trial based on newly discovered evidence to be filed no more than 3 years after the date of the verdict. Section 29-2101(6) deals with newly discovered exculpatory DNA evidence and is not relevant here.

The jury verdict was filed on February 8, 2013, and Alvarado filed a "Motion for New Jury Trial" that same day. A hearing on the motion was held on April 11, at which time Alvarado's counsel offered his own affidavit. In Alvarado's written motion for new trial, he set forth only the following grounds as the basis for a new trial:

> (A) There was an irregularity in the proceeding of the court, or the prosecuting attorney, or any order of the court, or abuse of discretion, by which the defendant was prevented from having a fair trial. [§ 29-2101(1)]
>
> (B) That the verdict is not sustained by sufficient evidence and is contrary to law. [§ 29-2101(4)]
>
> (C) Errors of law occurring at the trial. [§ 29-2101(7)]

Alvarado did not specify in his "Motion for New Jury Trial" that "newly discovered evidence" was a basis for his motion for new trial. Rather, this ground was raised orally at the April 11 hearing, and the supporting reasons were set forth in writing via Alvarado's counsel's "Affidavit in Support of Motion for New Trial," which was received over objection at the new trial hearing. The State suggests that the newly discovered evidence motion was not properly before the district court, since "Alvarado failed to file a written motion specifically identifying newly discovered evidence as the basis for his request for a new trial." Brief for appellee at 11. Accordingly, before getting to the merits of Alvarado's "newly discovered evidence," we address first whether the motion on that ground was properly before the trial court. There is no question that the other three grounds alleged in the motion filed February 8 were timely filed and properly before the court.

As to newly discovered evidence being a basis for a new trial, we first note that § 29-2103(4) allows for a motion for new trial to be filed within a reasonable time after discovery of the new evidence but no more than 3 years after the date of the verdict. In other words, a new trial requested on the grounds of newly discovered evidence is not limited to being raised within the 10 days immediately following the date of the verdict. The newly discovered evidence in this case was timely raised; so the remaining question is whether a "written application" was made. Section 29-2103(1) states that "[a] motion for new trial shall be made by written application and may be filed either during or after the term of the court at which the

verdict was rendered." In this case, Alvarado's counsel offered his affidavit setting forth the newly discovered evidence that was not available until after trial. The trial court elected to receive the affidavit over the State's objection and proceeded to consider the facts set forth in the affidavit before ruling on the motion for new trial. However, counsel's affidavit did not constitute a "written application" pursuant to § 29-2103(1). Thus, Alvarado's motion for new trial, based on newly discovered evidence, was not properly before the district court.

However, as stated previously, a motion for new trial based on newly discovered evidence may be filed up to 3 years after the date of the verdict. § 29-2103(4). Thus, we address the merits of this appeal out of concern for judicial economy because Alvarado could bring this motion again. See, generally, *State v. Thompson*, 246 Neb. 752, 523 N.W.2d 246 (1994).

We now consider the newly discovered evidence Alvarado claims creates a basis for a new trial. The affidavit submitted by Alvarado's counsel states in relevant part that (1) on April 3, 2013, the State filed a motion to revoke Ross' probation alleging that on March 27 Ross was charged with flight to avoid arrest, possession of methamphetamine, attempted assault, obstructing a peace officer, and willful, reckless driving, and alleging that Ross had contact with a person having a criminal record in order to obtain methamphetamine; (2) the events clearly show Ross suffers from a severe addiction to methamphetamine and is of a desperate and untrustworthy character, and knew where to find and how to acquire methamphetamine without Alvarado's being involved; (3) the State knew or should have known that Ross was not a reliable source of information or witness; (4) due to the above, Ross' testimony regarding Alvarado was not credible and should not have been presented to the jury; and (5) the above evidence was not discoverable by Alvarado prior to trial.

Alvarado's counsel argued that the "linchpin" of the State's case rested upon Ross, a "gentleman with a very severe drug addiction, a very desperate man, especially proven by later events"; a person who "has proven to be very unreliable and the State should have been aware of that from the get go, suffering from severe drug addiction"; and a person who is so unbelievable "to the point of the State dismissing another drug case right in the middle of a trial because of . . . Ross's activities." The trial judge noted that Ross was subject to cross-examination by counsel and that there had been testimony elicited from Ross disclosing he had been arrested for dealing methamphetamine. The trial judge stated, "So the fact that he was involved with methamphetamine was not a mystery to anybody at that point in time," and "counsel assumes that the State wouldn't use him because he is a meth addict, but I think we all knew that and the jury had the opportunity to evaluate his credibility when he testified." No further argument was offered, and the motion for new trial was denied.

One moving for new trial on the basis of newly discovered evidence must show that the evidence was uncovered since the trial, that the evidence was not equally available before the trial, and that the evidence was not simply discovered by the exercise of belated diligence. *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002). Generally, newly discovered evidence is evidence material to the defense that could not with reasonable diligence have been discovered and produced in the prior proceedings. *Id.* A criminal defendant who seeks a new trial because of newly discovered evidence must show that if the evidence had been admitted at the former trial, it would probably have produced a substantially different result. *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012). The evidence must be material to the moving party, and "[m]ateriality

has been explained as referring to newly discovered evidence which is 'so potent that by strengthening the evidence already offered, a new trial would probably result in a different verdict; the newly discovered evidence must be relevant and credible and not merely cumulative.'" *State v. McCormick*, 246 Neb. 271, 278, 518 N.W.2d 133, 139 (1994) (quoting *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993)), *overruled on other grounds, State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002).

In *State v. Egger*, 8 Neb. App. 740, 601 N.W.2d 785 (1999), the defendant was convicted of first degree sexual assault on a minor and incest for acts committed against his minor stepdaughter. The jury found the defendant guilty on August 12, 1998, and he filed his motion for new trial on September 28. The trial judge ignored all grounds contained in that motion, since they were not filed within 10 days of the verdict; however, the trial court did consider that part of the motion claiming newly discovered evidence. The defendant claimed he had new evidence consisting of a statement from the victim's sister that the "[victim] had told her she never had sex with [the defendant] and that she had made up the whole story," and that this sister "did not come forward with this until after the trial because [the victim] had threatened her to keep quiet." *Id*. at 750, 601 N.W.2d at 794. The trial court concluded the alleged new evidence was cumulative to the evidence already presented at trial and was "evidence only going to [the victim's] credibility." *Id.* This court found no abuse of discretion, and cited to *State v. Hortman*, 207 Neb. 393, 299 N.W.2d 187 (1980), for the proposition that "newly discovered evidence must, inter alia, be relevant and credible, not merely cumulative, and involve something other than credibility of witness." *State v. Egger*, 8 Neb. App. at 750, 601 N.W.2d at 794. See, also, *State v. Pierce and Wells*, 215 Neb. 512, 520, 340 N.W.2d 122, 128 (1983) ("[i]n order to justify a new trial, newly discovered evidence must involve something other than the credibility of a witness who testified at trial").

As the trial judge noted, during trial Ross admitted to buying, using, and selling methamphetamine and was subject to cross-examination. Additionally, aside from Ross' testimony at trial, offered and received for consideration by the jury was a DVD of the June 5, 2012, transaction wherein Alvarado gave Ross methamphetamine in exchange for money. The "new" evidence claimed by Alvarado goes only to Ross' credibility, and further, given the DVD evidence, a new trial would not likely result in a different verdict. We cannot say the trial court abused its discretion in denying the motion for new trial.

### 3. EXCESSIVE SENTENCE

Alvarado asserts that the district court imposed an excessive sentence. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

Alvarado was 47 years old at the time of the crime and at the time of sentencing. He had a diploma through the GED program and reported completing some college courses. Alvarado has serious medical problems requiring frequent medical care. He lost most of his tongue due to cancer. He also has a medication port in his abdomen.

Alvarado has an extensive criminal history dating back to the 1980's. His convictions include multiple driving under the influence (five times), driving under suspension (four times), assaulting an officer (three times), attempted breaking and entering, resisting arrest (three times), theft, theft by unlawful taking, possession of 1 ounce or less of marijuana (two times), felon in possession of a firearm, carrying a concealed weapon, assault, attempted possession of marijuana with intent to deliver, burglary, disturbing the peace (seven times), disorderly conduct, criminal trespass, and false reporting. With regard to the current offense, Alvarado sold methamphetamine within 1,000 feet of a playground. As part of the presentence investigation for his current convictions, the probation office conducted a "Level of Service/Case Management Inventory" with Alvarado. He was assessed in the "high" risk range to reoffend.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Williams, supra*. And it is the minimum portion of an indeterminate sentence which measures its severity. *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990). Alvarado was convicted of one count of distributing a controlled substance (methamphetamine) within 1,000 feet of a playground under § 28-416(4)(A)(ii), a Class ID felony. The statutory sentencing range for a Class ID felony is up to 50 years' imprisonment, with a mandatory minimum of 3 years' imprisonment. Alvarado was sentenced to 8 to 20 years' imprisonment and was given 175 days' credit for time served. His sentence is in the low- to mid-range of the permissible sentencing range. Having considered the relevant factors in this case, including his medical issues, we find that the sentence is not excessive or an abuse of discretion and that such sentence is therefore affirmed.

4. INEFFECTIVE ASSISTANCE OF COUNSEL

Alvarado claims he received ineffective assistance of counsel because his trial attorney (1) failed to pursue a defense theory advanced in his opening statement, (2) failed to adequately investigate and/or secure evidence necessary to impeach Ross' credibility, and (3) failed to adequately communicate with him prior to trial.

A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011). The determining factor is whether the record is sufficient to adequately review the question. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012). To show prejudice, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *Id*. An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id*.

(a) Failure to Pursue Defense Theory

The "defense theory" Alvarado alleges that his trial counsel failed to pursue comes from the following portion of his opening statement:

There is no exchange in money. You are not going to hear any talk about that. They didn't find any money. See, what happens is law enforcement gives him the money, here is $200, we copied it, take the money and he buys the drugs. That money is gone, nobody saw it. Where did it go?

. . . Ross is a baseball player, played semi-pro ball, maybe he played professional ball. I think he played for St. Louis. I know he played in Japan. He is a good ball player. I think he is a pitcher. And, his son plays baseball and he enjoys going to his son's games. He doesn't want to go away for 150 years and not be able to play baseball anymore.

Regarding the above, Alvarado argues:

The implication [was] that the buy money was not found by police upon searching . . . Ross after the "buy" because he had thrown it far away to get rid of evidence after he did not complete the buy, which would support [Alvarado's] theory that . . . Ross was retrieving his own drugs as opposed to the State's theory that [Alvarado] had sold drugs to . . . Ross.

Brief for appellant at 14. Alvarado argues his counsel did not pursue this theory during trial.

Alvarado misinterprets his counsel's opening statement. Counsel was not implying that Ross "utilized his pitching skills to dispose of the buy money." Brief for appellee at 14. Rather, counsel made two separate assertions: (1) Ross did not give Alvarado the money, and (2) Ross was motivated to cooperate with law enforcement because he wanted to continue to play baseball and watch his son play baseball.

As noted by the State in its brief, "the notion that Ross hurled the buy money into parts unknown during the course of the controlled buy is not supported by any evidence in the record. Ross was under constant surveillance by law enforcement, and his movements were captured on video." *Id.* Accordingly, trial counsel was not ineffective for failing to pursue a "theory" that was not supported by the evidence.

(b) Inadequate Impeachment

Alvarado claims that his trial counsel failed to adequately investigate Ross' alleged theft from Florentino Sandoval, a mentally handicapped person. However, the record shows that trial counsel obtained Ross' deposition testimony in connection with the Sandoval case and used it to question Ross' credibility in Alvarado's. Ross testified that Sandoval was adopted by his maternal grandparents and that he used to work at a restaurant with Ross. During questioning by Alvarado's counsel, Ross denied that Sandoval was mentally handicapped. Ross also explained that he helped Sandoval pay his bills (Ross took Sandoval's paycheck to the bank, had the bank issue money orders for Sandoval's bills, and gave the remaining amount to Sandoval in cash).

While Alvarado seems to suggest that his trial counsel should have done more, he does not explain what more trial counsel could have done. Counsel's ability to impeach Ross regarding the alleged theft from Sandoval was limited by statute. See Neb. Rev. Stat. § 27-608(2) (Reissue 2008) ("[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence," and they "may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the

witness"). Counsel did question Ross regarding the alleged theft from Sandoval--Ross simply refused to admit any wrongdoing. Alvarado has failed to show that his counsel was deficient in this regard and that any deficiency prejudiced him.

Alvarado also claims that his trial counsel failed to adequately investigate and present evidence regarding Ross' history of drug dealing, drug use, and other criminal behavior. However, during trial, Ross admitted to buying, using, and selling methamphetamine. He testified that he sold methamphetamine to only one individual on three different occasions. Buxbaum corroborated Ross' testimony by stating that the individual Ross admitted selling to is the only person that had identified Ross as a source of methamphetamine. Alvarado failed to identify any evidence beyond that which was introduced at trial regarding Ross' drug or other criminal history. Accordingly, Alvarado has not shown that his trial counsel's performance was deficient in this regard. Furthermore, Alvarado cannot show that he was prejudiced by any alleged deficiency (remembering that there is a DVD of the June 5, 2012, transaction wherein Alvarado gave Ross methamphetamine in exchange for money).

### (c) Communication Prior to Trial

Alvarado claims that his trial counsel failed to adequately communicate with him prior to trial. The record is insufficient to review on direct appeal Alvarado's claim of ineffective assistance of counsel in this regard, and accordingly, we decline to address it.

### VI. CONCLUSION

For the reasons stated above, we affirm Alvarado's conviction and sentence.

AFFIRMED.